MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
EFRAIN PONCE PLIEGO, Miguel Angel Leon
and OSCAR BLANCAS GARCIA,
*individually and on behalf of others similarly
situated,*

                               *Plaintiffs*,

        -against-

MON CHER MARKET INC. (D/B/A MON
CHER MARKET) and Jae Soo Lee,

                               *Defendants.*
  -------------------------------------------------------X

**COMPLAINT**


**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**


**ECF Case**

Plaintiffs Efrain Ponce PLIEGO, Miguel Angel Leon and Oscar Blancas Garcia,

individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through

their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as

against Mon Cher Market Inc. (d/b/a Mon Cher Market) ("Defendant Corporation"), and Jae Soo

Lee, ("Individual Defendant"), (collectively, "Defendants"), allege as follows:

<u>**NATURE OF ACTION**</u>

1.    Plaintiffs are former employees of Defendants Mon Cher Market Inc. (d/b/a Mon

Cher Market) and Jae Soo Lee.

2.    Defendants own, operate, or control an American/Asian restaurant, located at 339

Broadway, New York, NY 10013under the name "Mon Cher Market."

3.    Upon information and belief, Individual Defendant Jae Soo Lee serves or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operates or operated the restaurant as a joint or unified enterprise.

4.    Plaintiffs were employed as sandwich and salad maker, pasta maker and cook at the restaurant located at 339 Broadway, New York, NY 10013.

5.    At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

6.    Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.    Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

8.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

9.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

10.   Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New

York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

11.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

13.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate an American/Asian restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

14.    Plaintiff Efrain Ponce Pliego ("Plaintiff Ponce" or "Mr. Ponce") is an adult individual residing in Kings County, New York.

15.    Plaintiff Ponce was employed by Defendants at Mon Cher Market from approximately 2014 until on or about May 2021.

16.    Plaintiff Miguel Angel Leon ("Plaintiff Leon" or "Mr. Leon") is an adult individual residing in Bronx County, New York.

17.    Plaintiff Ponce was employed by Defendants at Mon Cher Market from approximately July 2014 until on or about June 2021.

18.    Plaintiff Oscar Blancas Garcia ("Plaintiff Blancas" or "Mr. Blancas") is an adult individual residing in Kings County, New York.

19.    Plaintiff Blancas was employed by Defendants at Mon Cher Market from approximately 2014 until on or about March 2020 and from approximately June 2020 until on or about January 2021.

*Defendants*

20.    At all relevant times, Defendants owned, operated, or controlled an American/Asian restaurant, located at 339 Broadway, New York, NY 10013under the name "Mon Cher Market."

21.    Upon information and belief, Mon Cher Market Inc (d/b/a Mon Cher Market) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 339 Broadway, New York, NY 10013.

22.    Defendant Jae Soo Lee is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jae Soo Lee is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Jae Soo Lee possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

23.   Defendants operate an American/Asian restaurant located in the Downtown section of Manhattan in New York City.

24.   Individual Defendant, Jae Soo Lee, possesses operational control over Defendant Corporation, possesses ownership interests in Defendant Corporation, or controls significant functions of Defendant Corporation.

25.   Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

26.   Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

27.   Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

28.   In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

29.   Upon information and belief, Individual Defendant Jae Soo Lee operates Defendant Corporation as either an alter ego of himself and/or failed to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

   a)   failing to adhere to the corporate formalities necessary to operate Defendant Corporation as Corporation,

b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporation for his own benefit as the sole or majority shareholder,

e) operating Defendant Corporation for his own benefit and maintaining control over this Corporation as a closed Corporation,

f) intermingling assets and debts of his own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

30.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

31.     In each year from 2015 to 2021, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

32.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

33.   Plaintiffs are former employees of Defendants who were employed as sandwich and salad maker, pasta maker and cook.

34.   Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Efrain Ponce Pliego*

35.   Plaintiff Ponce was employed by Defendants from approximately 2013 until on or about May 2021.

36.   Defendants employed Plaintiff Ponce as a sandwich and salad maker.

37.   Plaintiff Ponce regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

38.   Plaintiff Ponce's work duties required neither discretion nor independent judgment.

39.   Throughout his employment with Defendants, Plaintiff Ponce regularly worked in excess of 40 hours per week.

40.   From approximately September 2015 until on or about December 2017, Plaintiff Ponce worked from approximately 7:00 a.m. until on or about 7:00 p.m., 2 days a week and from approximately 7:00 a.m. until on or about 7:20 p.m., 3 days a week (typically 61 hours per week).

41.   From approximately January 2018 until on or about March 2019, Plaintiff Ponce worked from approximately 7:00 a.m. until on or about 6:00 p.m., 2 days a week, and from approximately 7:00 a.m. until on or about 6:20 p.m., three days a week (typically 56 hours per week).

42.   From approximately April 2019 until on or about April 2020, Plaintiff Ponce worked from approximately 8:00 a.m. until on or about 6:00 p.m., 2 days a week, and from approximately 7:00 a.m. until on or about 6:20 p.m., three days a week (typically 54 hours per week).

43.    From approximately April 2020 until on or about May 2021, Plaintiff Ponce worked from approximately 10:00 a.m. until on or about 5:30 p.m., five  days a week (typically 37.5 hours per week).

44.    Throughout his employment, Defendants paid Plaintiff Ponce his wages in cash or in a combination of check and cash.

45.    From approximately September 2015 until on or about December 2017, Defendants paid Plaintiff Ponce $11.50 per hour.

46.    From approximately January 2018 until on or about March 2019, Defendants paid Plaintiff Ponce $13.50 per hour.

47.    From approximately April 2019 until on or about May 2021, Defendants paid Plaintiff Ponce $15.00 per hour.

48.    Plaintiff Ponce's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

49.    For example, from approximately September 2015 until on or about April 2020, Defendants required Plaintiff Ponce to work an additional 20 minutes past his scheduled departure time three days a week, and did not pay him for the additional time he worked.

50.    Similarly, from approximately April 2020 until on or about May 2021, Defendants required Plaintiff Ponce to work an additional 30 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

51.    Although Defendants granted Plaintiff Ponce 30-minute meal periods, they constantly interrupted these breaks by requiring him to get back to work.

52.     In addition, Defendants deducted $30 per week from Plaintiff Ponce's wages for meal breaks Plaintiff Ponce had not been allowed to take because they had interrupted him.

53.     Although Plaintiff Ponce was required to keep track of his time by entering his scheduled start and stop times on a sheet of paper, these records did not reflect the fact that defendants required him to continue working 20 or 30 minutes past his scheduled stop times.

54.     Defendants required Plaintiff Ponce to sign a page with his name, the date and the total amount paid, in order to release his weekly pay.

55.     Every year, Defendants required Plaintiff Ponce to sign a document, the contents of which he was not allowed to review in detail.

56.     no notification, either in the form of posted notices or other means, was ever given to Plaintiff Ponce regarding overtime and wages under the FLSA and NYLL.

57.     Defendants did not provide Plaintiff Ponce an accurate statement of wages, as required by NYLL 195(3).

58.     Defendants did not give any notice to Plaintiff Ponce, in English and in Spanish (Plaintiff Ponce's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

59.     Defendants required Plaintiff Ponce to purchase "tools of the trade" with his own funds—including six shirts per year.

### Plaintiff Miguel Angel Leon

1.     Plaintiff Leon was employed by Defendants from approximately July 2014 until on or about June 2019.

2.     Defendants employed Plaintiff Leon as a pasta maker.

3.      Plaintiff Leon regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

4.      Plaintiff Leon's work duties required neither discretion nor independent judgment.

5.      Throughout his employment with Defendants, Plaintiff Leon regularly worked in excess of 40 hours per week.

6.      From approximately September 2015 until on or about December 2017, Plaintiff Leon worked from approximately 6:00 a.m. until on or about 4:00 p.m., Mondays through Fridays and from approximately 7:00 a.m. until on or about 7:00 p.m., on Sundays (typically 62 hours per week).

7.      From approximately January 2018 until on or about December 2018, Plaintiff Leon worked from approximately 6:30 a.m. until on or about 3:30 p.m., Mondays through Fridays, and from approximately 7:00 a.m. until on or about 5:00 p.m., on Sundays (typically 55 hours per week).

8.      From approximately January 2019 until on or about June 2019, Plaintiff Leon worked from approximately 7:00 a.m. until on or about 3:00 p.m., Mondays through Fridays and from approximately 7:00 a.m. until on or about 1:00 p.m., on Sundays (typically 46 hours per week).

9.      Throughout his employment, Defendants paid Plaintiff Leon his wages in cash.

10.      From approximately September 2015 until on or about December 2017, Defendants paid Plaintiff Leona fixed salary of $550 per week.

11.      From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Leon$13.50 per hour.

12.      From approximately January 2019 until on or about June 2019, Defendants paid Plaintiff Leon $15.00 per hour.

13.     Although Defendants granted Plaintiff Leon 30-minute meal periods, they constantly interrupted these breaks by requiring him to get back to work.

14.     In addition, Defendants deducted $7 per day from Plaintiff Leon's wages for each meal Plaintiff Leon had not been allowed to eat because they had interrupted him.

15.     Although Plaintiff Leon was required to keep track of his time by entering his scheduled start and stop times on a sheet of paper, these records did not reflect the actual time he worked.

16.     Defendants required Plaintiff Leon to sign a page with his name, the date and the total amount paid, in order to release his weekly pay.

17.     Every year, Defendants required Plaintiff Leon to sign a document, the contents of which he was not allowed to review in detail.

18.    no notification, either in the form of posted notices or other means, was ever given to Plaintiff Leon regarding overtime and wages under the FLSA and NYLL.

19.    Defendants did not provide Plaintiff Leon an accurate statement of wages, as required by NYLL 195(3).

20.    Defendants did not give any notice to Plaintiff Leon, in English and in Spanish (Plaintiff Leon's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Oscar Blancas Garcia*

21.    Plaintiff Blancas was employed by Defendants from approximately 2014 until March 2020 and from approximately June 2020 until on or about January 2021.

22.    Defendants employed Plaintiff Blancas as a cook.

23.  Plaintiff Blancas regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

24.  Plaintiff Blancas's work duties required neither discretion nor independent judgment.

25.  Throughout his employment with Defendants, Plaintiff Blancas regularly worked in excess of 40 hours per week.

26.  From approximately September 2015 until on or about March 2020, Plaintiff Blancas worked from approximately 5:30 a.m. until on or about 3:30 p.m., Mondays through Fridays and from approximately 6:00 a.m. until on or about 11:00 a.m. on Saturdays (typically 55 hours per week).

27.  Throughout his employment, Defendants paid Plaintiff Blancas his wages in cash.

28.  From approximately September 2015 until on or about December 2018, Defendants paid Plaintiff Blancas a fixed salary of $750.00 per week.

29.  Although Defendants granted Plaintiff Blancas 30-minute meal periods, they constantly interrupted these breaks by requiring him to get back to work.

30.  In addition, Defendants deducted $7.00 per day from Plaintiff Blancas's wages for each meal even if he had not been allowed to eat it because they had interrupted him.

31.  Defendants required Plaintiff Blancas to sign a page with his name, the date and the total amount paid, in order to release his weekly pay.

32.  Furthermore, each year Defendants required Plaintiff Blancas to sign a document, the contents of which he was not allowed to review in detail.

33.  Defendants did not provide Plaintiff Blancas an accurate statement of wages, as required by NYLL 195(3).

34.     Defendants required Plaintiff Blancas to purchase "tools of the trade" with his own funds—including 20 aprons.

35.     Defendants did not give any notice to Plaintiff Blancas, in English and in Spanish (Plaintiff Blancas's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

36.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

37.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

38.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

39.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

40.     Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

41.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

42. Each year Defendants required Plaintiffs to sign a document they were not allowed to review in detail.

43.     Furthermore, in order to get paid, Defendants required Plaintiffs to sign a piece of paper with their name, date and the total amount paid, but nothing regarding the hours worked or the rates.

44.     Defendants paid Plaintiffs their wages in cash.

45.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

46.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

47.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

48.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

49.     Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the

number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

50.     Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

51.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

52.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records as required under the FLSA.

53.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

54.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

55.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

56.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

57.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

58.     Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

59.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

60.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

61.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

62.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

63.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

64.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

65.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

66.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

67.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

68.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

69.     Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

70.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

71.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

72.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

73.     Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

74.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

75.     Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

76.     Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

77.     Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

78.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

79.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid

by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

80.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

81.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

82.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

83.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

84.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

85.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

86.     Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)      Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)      Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)      Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)      Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)      Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)      Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)      Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
         September 21, 2021

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:         /s/ Michael Faillace
            Michael Faillace [MF-8436]
            60 East 42nd Street, Suite 4510
            New York, New York 10165
            Telephone: (212) 317-1200
            Facsimile: (212) 317-1620
            *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

July 13, 2021

BY ELECTRONIC SIGNATURE

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Oscar Blancas Garcia

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:                    Oscar blancas Garcia

Date / Fecha:                         13 de julio 2021

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

July 12, 2021

BY ELECTRONIC SIGNATURE

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Efrain Ponce Pliego

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                              12 de julio 2021

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
Faillace@employmentcomplieance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

July 13, 2021

BY ELECTRONIC SIGNATURE

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Miguel Angel Leon Guzman

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                 X Miguel Angel

Date / Fecha:                      13 de julio 2021